Filed 12/3/24  D.S. v. J.E. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| D.S., | |
| Plaintiff and Respondent, | G062036 |
| v. | (Super. Ct. No. 10P001296) |
| J.E., | ORDER MODIFYING OPINION AND DENIAL OF PETITION FOR HEARING; NO CHANGE IN JUDGEMENT |
| Defendant and Appellant. | |

It is hereby ordered that the opinion filed on November 12, 2024, be modified as follows:

On page 3, in the first sentence of the first full paragraph, the initials "D.E." are deleted and replaced with the initials "D.S.", so the sentence reads:

In May 2022, at a time when J.E. and D.S. equally shared legal custody, J.E. had sole physical custody, and D.S. had weekly visitation rights, D.S. filed an ex parte request for an emergency temporary order granting him full legal custody over healthcare and educational matters.

There is no change in the judgment.

The petition for rehearing is DENIED.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.

Filed 11/12/24  D.S. v. J.E. CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| D.S.,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J.E.,<br><br>    Defendant and Appellant. | G062036<br><br>(Super. Ct. No. 10P001296)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan T. Vu, Judge. Affirmed. Judicial notice. Granted in part and denied in part.

J.E., in pro. per., for Defendant and Appellant.

D.S., in pro. per., for Plaintiff and Respondent.

For many, time heals. For some, time unfortunately provides an opportunity to engage in never-ending hostile and bitter legal battles with others, often at the expense of people around them, including minors. The matter before us is an example of such a case.

J.E., mother of the minor, appeals from an order granting D.S., father of the minor, legal custody over the minor's healthcare and education related matters, reaffirming a prior court ordered legal name change for the minor, and denying attorney fees requested by J.E. pursuant to Family Code section 7605.[1] She acknowledges the name issue is moot due to a subsequent trial court order, but she maintains the other two aspects of the challenged order are erroneous because the court failed to follow statutorily prescribed procedures, failed to engage in the proper analyses, and lacked evidentiary support for its factual findings. Because the subsequent court order which rendered moot the name issue also rendered moot the legal custody issue, our review is limited to the attorney fees denial. As to that issue, although we find the court did not render a decision within the statutorily prescribed time frame, J.E. does not demonstrate prejudice under the circumstances. And, because we conclude the court's factual findings are supported by substantial evidence and the court did not otherwise abuse its discretion in declining to award fees, we affirm the order.

FACTS

J.E. and D.S. were never married but have one child together who is now a teenager in high school. Since early on in the minor's life, the parents have been engrossed in highly contentious legal battles with one

---

[1] All further statutory references are to the Family Code unless otherwise stated.

another over paternity, child support, and custody. Details of some of their prior clashes, which another panel of this court described as "replete with evidence of not only antagonism between the parties, but outright acrimony," are set forth in two prior unpublished opinions. (*D.S. v. J.E.* (Apr. 29, 2022, G058880); *D.S. v. J.E.* (Apr. 29, 2022, G059942).) This appeal primarily concerns custody and attorney fees related matters.

In May 2022, at a time when J.E. and D.S. equally shared legal custody, J.E. had sole physical custody, and D.E. had weekly visitation rights, D.S. filed an ex parte request for an emergency temporary order granting him full legal custody over healthcare and educational matters. In a supporting declaration, D.S. indicated the minor's school had excluded the minor from attending school in person roughly one month prior "because [J.E.] refuse[d] to consent for [the minor] to be current on [s]chool [d]istrict required immunization schedules." According to D.S., even though they had joint legal custody, J.E. "completely exclude[d] [D.S.] from input on decisions related to [the minor's] schooling and medical needs to keep [the minor] in school." Compounding the matter, from his perspective, was J.E.'s supposed refusal to comply with a 2016 court order regarding the minor's last name, which he claimed resulted in medical and school related records being "in disarray," as well as "additional confusion and chaos."

J.E. opposed the ex parte request. She asserted there was no immediate danger and there would be no irreparable harm. In addition, she requested attorney fees pursuant to section 7605 and time to retain counsel.

The trial court issued certain temporary orders and set the matter for a future hearing. Among the temporary orders were that D.S. would have temporary sole legal custody of the minor, "authorized only to make decisions and take actions on behalf of the minor child that [were]

3

necessary to ensure that the child resume[d] in-person attendance at the school that [the minor] was attending immediately prior to April 13, 2022."

In J.E.'s formal response, which was filed by her retained counsel, J.E. objected to D.S.'s proposed legal custody change and asked the court to instead grant her "final decision-making authority regarding all decisions concerning [the minor's] medical care and education." She claimed that since the minor was prohibited from attending in-person school roughly a month and a half earlier, D.S. did nothing but she "was working diligently with [the minor's] pediatrician to safely complete all required vaccinations."

As to the name issue, J.E. claimed D.S. was the one who created confusion by modifying the minor's birth certificate in a manner inconsistent with the 2016 court order. She noted the school and others were using the last name the minor wished to use. In that vein, she requested the court order the minor's last name be restored to what it was prior to 2016 or, alternatively, order the last name be composed of her and D.S.'s last names and hyphenated.

J.E.'s last request was that the court order D.S. to contribute to her attorney fees. There were discrepancies in the amount being requested, with two places listing $5,000 and two others listing $7,500. An attached declaration from her attorney indicated she paid a $7,500 retainer and the attorney believed resolution of the request for order (RFO) would cost between $5,000 and $7,500, depending on its resolution.

The trial court held a hearing on the RFO, at which J.E. was represented by counsel and D.S. was self-represented. Both parties testified, and the court took the matter under submission.

In its subsequent written ruling, the trial court granted D.S.'s legal custody request and denied J.E.'s requests concerning the minor's last

4

name and attorney fees. More specifically, and among other things, the court: (1) gave D.S. sole legal custody concerning educational and healthcare decision, including vaccinations, with all other decisions being subject to joint legal custody; (2) allowed D.S. to take physical custody of the minor outside his regular visitation time, subject to certain conditions, for the purpose of getting the minor vaccinated; (3) confirmed the minor's name as that which was ordered in 2016; (4) prohibited J.E. from having any provider use a name other than that legal name; and (5) gave both parties equal access to the minor's educational and health records. As for fees, although the court found some disparity between the parties in access to funds to retain counsel, it concluded J.E. had the ability to pay her own legal expenses because her income and expense declaration listed she had over $19,000 in her bank account. The court also explained a fees award would not be appropriate because J.E.'s actions caused D.S. to file the RFO, her actions were not in the minor's best interests, and her arguments were not supported by, and "in several significant respects" were contrary to, the evidence.

After unsuccessfully moving the trial court to reconsider its ruling, J.E. filed a timely appeal.

DISCUSSION

J.E. challenges two aspects of the trial court's order. First, she argues the court abused its discretion in modifying legal custody. Second, she asserts the denial of attorney fees must be reversed because the court failed to rule on her request within the statutorily prescribed time period and failed to properly evaluate the issue. We find the first issue to be moot due to a subsequent court order and the second issue to be without merit.

5

## I.

## MOOTNESS

The trial court entered the challenged order in August 2022. In April 2023, as a result of a mediated agreement between the parties, the court entered an order modifying the parties' parenting agreement. On our own motion, and having provided the parties an opportunity to weigh in on the matter, we take judicial notice of the April 11, 2023 court order. (Evid. Code, §§ 452, subd. (d)(1), 455, subd. (a), 459.) Among the provisions of the April 2023 order are that J.E. and D.S. shall have joint legal custody, "shar[ing] in the responsibility . . . on matters concerning the health, education, and welfare of the child."

"'An appellate court will not review questions which are moot and which are only of academic importance." [Citations.] A question becomes moot when, pending an appeal . . . , events transpire that prevent the appellate court from granting any effectual relief.'" (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419.) Such is the case here. J.E. provides several reasons why she believes we must reverse the portion of the order granting D.S. legal custody over educational and healthcare matters. However, even if we were to conclude her arguments have merit, the April 2023 order already restored joint legal custody over all matters. Thus, the custody issue is moot and we express no opinion on the merits of J.E.'s related arguments.

## II.

## ATTORNEY FEES UNDER SECTION 7605

J.E. urges us to reverse the trial court's denial of attorney fees pursuant to section 7605, claiming the court ignored the statutorily prescribed time frame for ruling on such a request, the denial is "not

supported by the evidence," and it amounts to an abuse of discretion. Having thoroughly reviewed the record, we find no prejudicial error.

Section 7605 provides for attorney fee and cost shifting in Uniform Parentage Act (§ 7600 et seq.) cases, both at the initial phase of establishing custody or visitation, and in "any proceeding subsequent to entry of a related judgment." (§ 7605, subd. (a).) The purpose of the statute "'is *not* the redistribution of money from the greater income party to the lesser income party' but instead '*parity*: a fair hearing with two sides equally represented.' [Citation.] 'The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength.'" (*N.S. v. D.M.* (2018) 21 Cal.App.5th 1040, 1053.)

When considering a request for attorney fees and costs under section 7605, a court is to consider and make findings concerning whether (1) an award of fees and costs is appropriate, (2) "there is a disparity in access to funds to retain counsel," and (3) "one party is able to pay for legal representation of both parties." (§ 7605, subd. (b).) "If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (*Ibid.*) The court's determination "shall" be made "within 15 days of the hearing on the motion or order to show cause" concerning the fees and costs request. (§ 7605, subd. (f).)

Here, the hearing on the fees request occurred at the same time the trial court heard from the parties concerning D.S.'s RFO and J.E.'s counter requests. After the hearing, the court took the matters under submission. A little less than three months later, it issued a ruling addressing all issues.

7

We agree with J.E. that the trial court did not heed the statute's mandate of deciding the attorney fees issue within 15 days of the hearing. Such an error, however, does not mandate reversal unless J.E. demonstrates prejudice. (Cal. Const., art. VI, § 13.) This she has not shown.

Contrary to J.E.'s representations, J.E. retained counsel of her own choosing. And, with the exception of her opposition to D.S.'s ex parte request, counsel represented her throughout the proceedings related to D.S.'s RFO and the fees request. Indeed, her counsel prepared and filed the papers and exhibits responding to the RFO, the section 7605 fee request and a related declaration, and J.E.'s income and expense declaration. Additionally, counsel orally argued the matters to the trial court. It was only after issuance of the challenged court ruling that her counsel withdrew and J.E. became self-represented once again.

Notably, there is nothing in the record indicating counsel's representation of J.E. was inhibited or impacted in any way by a lack of funds. To the contrary, the record evidences J.E. paid a $7,500 retainer and her counsel estimated it would cost between $5,000 and $7,500 to resolve the RFO related issues.

*In re Marriage of Knox* (2022) 83 Cal.App.5th 15 (*Knox*), on which J.E. relies is readily distinguishable. There, a litigant in a marital dissolution case filed an attorney fees and costs application pursuant to a statute similar to section 7605. (*Knox*, at pp. 20-21 [request made pursuant to § 2030].) The trial court did not consider or rule on the application until roughly a year and a half later, after the completion of trial on the underlying disputed matters which included support and asset distribution. (*Id*. at p. 37.) Due to lack of funds, the party was self-represented throughout the proceedings. (*Id*. at p. 38.) Those circumstances are a far cry from that which occurred in this case.

8

J.E. next contends "all of the requirements . . . under [section] 7605 were met," and the denial of fees "was not supported by the evidence and was an abuse of discretion." So her argument goes, it was D.S.'s conduct concerning the minor's last name, his failure to act in the minor's best interest, and his "bad faith conduct" that led to court proceedings, which in turn resulted in her incurring attorney fees and costs. From this she posits an award of fees under section 7605 "is appropriate."

We are not persuaded. To begin, from a factual standpoint, the trial court found:  (1) J.E. unilaterally decided to delay the minor's vaccinations or not have the minor receive certain vaccinations, causing the minor to be excluded from in-person attendance at school; and (2) J.E. continued to use an incorrect last name for the minor with school and healthcare providers, despite the court's repeated rejection of J.E.'s attempts to alter the 2016 court order concerning the minor's last name.

These findings are supported by substantial evidence.[2] Among other things, the trial court had before it a declaration from D.S. signed

---

[2] J.E. questions the existence of certain evidence relied upon in the trial court's written decision. Given the virtual nature of the RFO hearing, and in accordance with court provided directions, it appears D.S. submitted a variety of exhibits to the court via e-mail, copying J.E., roughly five days before the hearing. Although the parties and the court discussed the exhibits during the RFO hearing, and it seems the court and D.S. acted as if they were in evidence, J.E.'s counsel objected to them based on D.S.'s "violation of [the trial] court['s] rules." In addition, there is no indication D.S. formally asked the court to admit them into evidence. We need not resolve matters surrounding the exhibits, including the propriety of the court's consideration of them, because the remainder of the evidence before the court was sufficient to support the court's factual determinations. We also deny J.E.'s request that we take judicial notice of a variety of documents that were not presented to the lower court in conjunction with the relevant proceedings. (See *LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 946, fn. 6.)

under penalty of perjury which set forth the circumstances leading up to his RFO. They included J.E.'s awareness of the school's immunization requirements, J.E.'s disputes with the school concerning its vaccination requirements and processes, the minor being excluded from attending school in person due to J.E.'s refusal to consent to minor receiving the necessary vaccines to be current with those immunization requirements, J.E.'s exclusion of D.S. from school related medical decisions, and J.E.'s use of a different last name for minor's medical and school purposes than the one ordered by the court in 2016. Additional evidence included an e-mail from J.E. to the assistant principal of the minor's school insisting that "all records need to reflect" a specified last name which was inconsistent with the 2016 court order, as well as live sworn testimony from D.S. about actions taken by J.E. to impede D.S.'s ability to get the minor vaccinated.

At oral argument, J.E. emphasized the need for this court to "fact check this case," claiming D.S. was not being forthright. Papers she filed in conjunction with this appeal contain similar assertions. We have thoroughly reviewed the record and find D.S.'s factual representations to be supported. In contrast, we find instances of inaccurate representations and mischaracterizations by J.E. We caution J.E. that overstating or misrepresenting the record, at the very least, violates court rules. (Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C).) Further, "'[m]isstatements, misrepresentations[,] and/or material omissions of the relevant facts . . . can instantly "undo" an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility.'" (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1485, fn. 12.)

There is no doubt J.E. believes D.S.'s evidence was not reliable and was contradicted or called into question by other evidence. However,

10

credibility determinations, resolution of conflicts in testimony, and the weighing of evidence are within the province of the trial court. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479; *People v. James* (1977) 19 Cal.3d 99, 107.) It is not our role to conduct our own evaluation of those matters. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 ["'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility'"]; *Shamblin*, at p. 479.)

Turning to the trial court's exercise of discretion, we similarly find no merit in J.E.'s argument that the court abused its discretion. Notably, her opening brief is conclusory and largely devoid of any reasoned supporting analysis, leaving it to her reply brief to fill in the gap. Two basic tenets of appellate practice, which apply equally to those who are self-represented (see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985), are that matters raised for the first time in a reply brief are generally deemed forfeited[3] and the failure to develop an argument forfeits a claim of error. (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 497; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7.)

Looking past these deficiencies and at the trial court's analysis, it is evident the court evaluated and made findings concerning the correct factors: disparity in access to funds to retain counsel, ability to pay, and whether an award was appropriate under the circumstances. (§ 7605; *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 643-644 [appropriate for court to evaluate relative circumstances of parties in making § 7605 fees determination].) Although it found some disparity in access due to D.S.

---

[3] For this reason, we do not consider a constitutional due process argument J.E. makes for the first time in her reply brief.

having a "substantially greater" income than J.E., it concluded that disparity did not justify a fee award for at least two reasons. One, J.E.'s conduct leading up to the filing of the RFO, along with her requests and arguments contrary to the evidence during the RFO proceedings, made an award to her inappropriate. J.E. once again repeats her belief that D.S. is to blame for everything. But, as previously explained, the court concluded otherwise and its factual determinations are supported by substantial evidence. Two, J.E.'s income and expense declaration listing she had over $19,000 in a bank account showed she could preserve her rights and present her case adequately without a fees award. In her reply brief, J.E. disputes that she could have used the bank account money for attorney fees, claiming it came from a business economic injury disaster loan. No such argument was made to the court prior to its ruling on the RFO, nor was any evidence to that effect presented prior to that time. It was not until a motion for reconsideration that J.E. made the assertion in a declaration without supporting evidence; we therefore disregard it.

On the record before us, viewing all the evidence in a manner favorable to the challenged order, we cannot say the court's overall conclusion was one "'that no judge could reasonably have made.'" (*Darab Cody N. v. Olivera* (2019) 31 Cal.App.5th 1134, 1145; see also *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975.)

## III.

### J.E.'S REMAINING REQUESTS

Interwoven in J.E.'s arguments concerning the challenged order are extensive diatribes about D.S. related to the minor's legal name. She acknowledges any challenge to the trial court's ruling concerning the name is moot in light of the April 11, 2023 order which, in part, restored the minor's

name to its pre-2016 state. Nevertheless, she urges us to take certain steps to remedy alleged name related issues. For example, she asks that we direct the trial court to "issue new orders directing [the California Department of Public Health] to seal and replace the current [birth] certificate on file . . . and reinstate the original birth certificate . . . pursuant to [section] 7639." Citing Health and Safety Code section 102730, she also asks for an order "for the release of contents of [the] [m]inor's birth certificate file."

These matters fall outside the scope of our jurisdiction, as they do not relate to the challenged order before us. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 304 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from'"].) We express no opinion whether they may be properly directed to the trial court in the first instance.

Notwithstanding whether a party may resort to the courts for certain matters, for everyone's sake, particularly the minor's, it would behoove the parties to put their own differences aside and resolve disputes amicably and efficiently — by judicial order if necessary — keeping the minor's best interests at the forefront. The record makes clear that is an especially difficult task for J.E., but it is an exceedingly necessary one. As this court and other courts have repeatedly observed, the interests of a minor are best served when the adults "'act in a mature and courteous manner, treat[] each other with dignity and respect,'" and "are mutually supportive of all parental relationships, so that each custodial setting is a warm, supportive and secure environment." (*In re Marriage of Dunn* (2002) 103 Cal.App.4th 345, 349-350; see also *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 257 [emphasizing Legislature's conclusion that parental cooperation "is more likely to produce a sound resolution than litigation"]; *In re Marriage of*

13

*Candiotti* (1995) 34 Cal.App.4th 718, 726.) Animosity is detrimental and never the answer.

DISPOSITION

The order is affirmed. D.S. is entitled to costs on appeal.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.